IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMANTHA BROWN, Individually and as Mother and Next Friend of DP, a minor, ) ) ) Plaintiff, ) ) v. ) ) JESUS REYES, Acting Chief Probation Officer ) of the Cook County Adult Probation ) Department, and ACURIE COLLIER, ) ) Defendants. ) | Case No. 11 C 560<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Samantha Brown ("Brown") brought suit against Defendant Jesus Reyes ("Reyes"), the Acting Chief Probation Officer of the Cook County Adult Probation Department, for inadequately monitoring Acurie Collier ("Collier"), a convicted sex offender, while he was on probation. Reyes and his agents failed to notice that Collier violated curfew and computer use restrictions imposed by the Adult Sex Offender Program, and this oversight enabled Collier to target DP, a minor, over the internet, break into her residence, and sexually abuse her. He also physically assaulted Brown, DP's mother, as part of the same incident. The Complaint alleges that Reyes violated § 1983 by depriving Brown and DP of their "right to safety" (Count I); Reyes was negligent for failing to train and monitor probation agents to detect Collier's probation violations before the assault (Count II); and Reyes displayed willful and wanton conduct in managing the Cook County Adult Probation Department (Count III). Brown also asserts various state law claims against Collier in Counts IV-IX, but these are not before the Court because only Reyes has moved to dismiss those claims against him. For the following reasons, the Court grants Reyes's Motion to Dismiss Counts I, II, and III.

## BACKGROUND

The following facts are taken from Brown's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

As the Acting Chief Probation Officer of the Cook County Adult Probation Department, Reyes was responsible for supervising, training, and managing Cook County probation officers. (Compl. ¶ 7.) Collier, a convicted sex offender, was on probation and subject to the requirements of the Cook County Probation Department's Adult Sex Offender Program. (*Id.* ¶ 5.) This program imposed a curfew and prohibited Collier from possessing a computer. (*Id.* ¶ 8.) One unidentified probation officer, an agent of Reyes, was specifically responsible for ensuring that Collier complied with these conditions of probation. (*Id.*)

On the evening of July 30, 2010, Collier forced his way into Brown and DP's residence, and once inside he physically assaulted Brown and sexually assaulted DP. (*Id.* ¶ 13.) Before the attack, Collier violated the terms of his probation over forty times by using a computer and violating curfew. (*Id.* ¶¶ 12, 13.) In fact, it was through forbidden interactions over the computer that Collier met DP and obtained her home address. (*Id.* ¶ 13.) Neither Reyes nor the probation officer assigned to Collier discovered and disciplined Collier for these probation violations that enabled him to carry out the July 30 attack. (*Id.* ¶ 10.) The lack of diligence by Reyes and the probation officer enabled Collier to rape DP and physically assault Brown. (*Id.* ¶ 18.)

## STANDARD OF REVIEW

To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when

"accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

To withstand a Rule 12(b)(6) challenge, the complaint must overcome two obstacles. First, it must provide the defendant "fair notice" as to the character of the claim and the facts supporting the claim. *Twombly*, 550 U.S. at 555. In showing the grounds supporting relief, the plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Second, when there are well-pleaded factual allegations, the Court assumes their veracity, construes them in the light most favorable to the plaintiff, and then determines if they plausibly give rise to an entitlement to relief. *Id.*; *see Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011).

**DISCUSSION**

Reyes asserts that Brown lacks standing because the Cook County Probation Department never had an affirmative duty to protect Brown and DP from Collier. Whether Reyes and the Cook County Probation Department had a duty under the Due Process Clause to protect Brown and DP's "right to safety," however, falls more appropriately under Rule 12(b)(6). The Court will therefore evaluate Brown's § 1983 claim in that context.

**I.     Section 1983 Claim**

Under 42 U.S.C. § 1983, Brown must allege: (1) deprivation of a right guaranteed by the Constitution or laws of the United States; and (2) a person acting under the color of state law caused the deprivation. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009);

3

*Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). The dispute in this case deals primarily with element (1), namely, whether Brown and DP were constitutionally entitled to protection from Collier. The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." By failing to intervene to stop Collier's attack, Brown claims that Reyes deprived her and DP of their constitutional "right to safety." (Compl. ¶ 17.) In other words, Reyes divested Brown and DP of their liberty interest in being free from unwarranted invasions of their personal security.

The Due Process Clause, however, is "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago County Dep't of Social Services, et al.*, 489 U.S. 189, 195 (1989). As a general rule, under the Due Process Clause a state is not responsible for protecting citizens from harm by private actors. *Id.* (Due Process Clause serves "to protect the people from the State, not to ensure that the State protect[s] them from each other"); *Buchanan-Moore*, 570 F.3d at 827; *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998). Brown's § 1983 claim turns on Reyes's alleged failure to protect Brown and DP from another private actor, Collier. This fits comfortably within *DeShaney*'s rule that imposes no duty on Reyes or the Cook County Probation Office to protect Brown and DP from private violence.

The inquiry does not end there because courts have carved out two exceptions to the *DeShaney* rule, either of which impose upon the state an affirmative duty to protect individual citizens. First, the state is obligated to protect those individuals with whom it has a "special relationship." Such a relationship, and the state's duty to provide for the well-being of the private individual that goes along with it, exists when the state "takes a person into its custody and holds him there against his will." *DeShaney*, 489 U.S. at 199-200; *Buchanan-Moore*, 570 F.3d at 827.

4

When the state restrains an individual's freedom through incarceration or institutionalization, for example, that individual can no longer provide for himself so there becomes a state duty to provide for "basic human needs," such as food, clothing, shelter, medical care, and safety. *DeShaney*, 489 U.S. at 200; *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). Brown does not contend that this exception applies, but even if she did, the claim that Reyes negligently monitored a convicted criminal on probation does not involve the kind of restraint of freedom that triggers the "special relationship" exception. Similarly, because Collier was not dependent on the state to provide fundamental human needs, the rationale behind the exception does not apply.

That leaves the second *DeShaney* exception: the state-created danger exception. If Brown can satisfy three components, this exception exposes a state to liability for failing to uphold its duty to protect its citizens: (1) by an affirmative act, the state creates a dangerous situation or increases the danger that a private citizen faces; (2) the state fails to protect the private individual from the danger it created, and this failure is the proximate cause of harm to the private individual; and (3) the state's failure to protect the individual "shocks the conscience." *King ex rel. King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007); *Buchanan-Moore*, 570 F.3d at 827.

With respect to the first component, there is no Due Process Clause claim where a private actor inflicts the harm and the state merely "stood by and did nothing when suspicious circumstances dictated a more active role." *DeShaney*, 489 U.S. at 203 (where social workers received complaints that child was being abused by his father but did not remove him from his father's custody, and the child was severely beaten, the father created the danger, not the state); *Bowers*, 686 F.2d at 618 (releasing a criminal with history of violent convictions and failing to protect private individual from him not constitutional violation). The state must therefore affirmatively put private individuals in

5

harm's way, effectively throwing them "into a snake pit." *Ellsworth*, 774 F.2d at 185 (quoting *Bowers*, 686 F.2d at 618); *see, e.g., White v. Rochford*, 592 F.2d 381 (7th Cir. 1979) (police officers had duty to protect minor children from immediate danger after officers arrested minor's guardian); *Spence v. Staras*, 507 F.2d 554 (7th Cir. 1974) (state mental hospitals must constitutionally protect patients from known assault risks); *Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972) (police officers must help a victim being beaten by the officer's colleagues).

      Here, Collier is the source of danger for Brown and DP, not Reyes and the Cook County Probation Department. Brown claims that it was Reyes's inaction that violated her Fourteenth Amendment right to personal security; had the Cook County Probation Department more vigorously enforced the probation conditions, the July 30 attack could have been avoided. But while affirmatively creating a dangerous situation triggers a constitutional duty to protect, negligent failure to react to a potentially dangerous situation does not. *See Ellsworth*, 774 F.2d at 186 (police provided protection during day hours to an undercover narcotics agent's wife, and a masked man attacked her after the assigned bodyguard was released from duty; city police did not harm her, the criminal did); *DeShaney*, 489 U.S. at 203; *cf. Reed*, 466 F.2d at 1127 (specific police action of arresting the sober driver, and leaving the intoxicated passenger alone in the car, created a danger). Simply put, the allegations in Brown's Complaint cannot plausibly state a claim for relief because Reyes did not produce the dangerous situation resulting in the attack. As pled, Collier was the danger; Brown just takes issue with how Reyes and the Cook County Probation Department responded to this preexisting danger. Brown thus cannot establish the first element of the state-created danger exception.

6

Brown's Complaint is equally defective for inadequately pleading facts showing the state-created danger proximately caused the harm she and DP suffered. Reyes's negligent supervision of Collier must have created a "familiar and specific" danger to be foreseeable. *Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir. 1993) (specific danger where police arrested sober driver, leaving behind an intoxicated passenger, who after the police left drove the car and created an accident). The danger must also be limited in time and scope. *Id.* (danger posed by drunk driver was limited in scope—those traveling on a specific highway—and limited in time—a two hour span when driver was intoxicated); *Buchanan-Moore*, 570 F.3d at 828 (affirming granting of motion to dismiss where complaint alleged no facts showing a mentally ill man released from prison "posed a threat to a definable population" because a "generalized, amorphous zone of danger is insufficient to trigger a state duty to protect"); *Martinez v. California*, 444 U.S. 277, 286 (1980) (murder five months after parolee was released from prison was "too remote" in time from the complained-of state action to constitute a civil rights violation).

Like *Buchanan-Moore*, Brown does not allege that Reyes's inaction exposed a specific segment of the population to danger. Rather, she generally claims, without elaboration, that Reyes had a constitutional duty to enforce the conditions of probation. Further, while *Reed* involved a state-created danger limited to a particular highway during a definite period of time, Brown's Complaint falls short of sufficiently defining either the scope or time of the alleged danger. Finally, Brown's Complaint alleges no facts plausibly establishing that Reyes or the Cook County Probation Department knew about Collier's probation violations before the July 30 attack. Neglecting to allege facts suggesting that the state actor was familiar with the "specific dangers" indicates that the attack was "unpredictable rather than legally foreseeable." *Buchanan-Moore*, 570 F.3d at 828. As a result,

the indefinite danger alleged in Brown's Complaint does not state a claim that Brown and DP's injuries were proximately caused by Reyes neglecting to enforce the probation conditions.

Finally, the inattentive supervision of Collier's compliance with probation rules is not extreme enough to "shock the conscience." There is not an exact framework for this analysis, but it tracks "tort law's spectrum of liability." *King*, 496 F.3d at 819. Only conduct that falls on the "more culpable end" of tort liability, such as where a public official displays deliberate indifference to the private individual's rights, shocks the conscience; simple negligence is not enough. *Id.*; *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). Here, Brown never alleges that Reyes knew about Collier's probation violations before the attack, and a generous interpretation of Reyes's inaction amounts to nothing beyond negligence. *See, e.g., King*, 496 F.3d at 819 (school policy preventing student reentry after hours was merely negligent for failing to consider that, for safety reasons, a student may need to reenter the school); *but see Reed*, 986 F.2d at 1127 (declining to dismiss complaint for not "shocking the conscience" because police officers' acts made plaintiff vulnerable to a drunk driver). Brown thus fails under all three of the elements for the state-created danger exception.

Brown seeks limited discovery to ascertain the identity of the probation officer assigned to monitor Collier so that she can amend the Complaint. The Court, however, has discretion to deny leave to amend where such an amendment would be futile. *King*, 496 F.3d at 819 (amendment was futile because state actor did not affirmatively create danger for an individual); *Brunt v. Service Employees Intern. Union*, 284 F.3d 715, 720 (7th Cir. 2002). If Brown were to amend the Complaint to add the probation officer responsible for overseeing Collier, it would not cure the underlying deficiencies in her claim—that neither Reyes nor any individual probation officer had a

8

constitutional duty to protect Brown and DP from Collier's attack. The Court therefore denies Brown's request for both discovery and leave to amend.

It is difficult to ignore the horrific allegations in the Complaint concerning Collier's conduct and the fact that Reyes and the probation officers under his control did little to enforce the conditions of probation. But the controlling legal consideration is that Reyes and the Cook County Probation Department had no constitutional duty to protect Brown and DP from another private individual's conduct. Brown's Complaint therefore fails to state a claim under Rule 12(b)(6) and the Court grants Reyes's Motion to Dismiss Count I. As such, the Court need not address Reyes's additional arguments challenging the § 1983 claim. *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 714 n.14 (7th Cir. 2002) (not addressing qualified immunity because complaint did not support a violation of constitutional rights).

**II.     State Law Negligence and Willful and Wanton Conduct Claims**

Brown's § 1983 claim, the basis for federal jurisdiction, fails to state a cognizable claim. As such, the Court also grants Reyes's Motion to Dismiss Counts II and III, which are all brought under state law. The Seventh Circuit has consistently stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999). Finding no justification for departing from this "usual practice," the Court dismisses without prejudice the supplemental state law claims asserted in Counts II and III of Brown's Complaint.

**CONCLUSION AND ORDER**

For these reasons, the Court grants Reyes's Motion to Dismiss Counts I, II, and III of the Complaint.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: August 26, 2011