IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMANTHA BROWN, Individually and as Mother and Next Friend of DP, a minor, ) ) ) Plaintiff, ) ) v. ) ) JESUS REYES, Acting Chief Probation Officer ) of the Cook County Adult Probation ) Department, and ACURIE COLLIER, ) ) Defendants. ) | Case No. 11 C 560<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Samantha Brown sued Defendant Jesus Reyes, the Acting Chief Probation Officer of the Cook County Adult Probation Department, for inadequately monitoring Acurie Collier, a convicted sex offender, while he was on probation. According to Brown, Reyes and his agents failed to notice that Collier violated curfew and computer use restrictions imposed by his probation, and that as a result, Collier was able to meet DP, Brown's minor daughter, over the internet, break into her house, and sexually abuse her. He also physically assaulted Brown as part of the same incident. The complaint alleges that Reyes violated Brown and DP's constitutional rights by depriving them of their "right to safety," as well as a pair of state law claims.[1] Reyes asserts in his motion to dismiss that he and his agents had no affirmative constitutional duty to protect Brown and DP from Collier. For the following reasons, the Court grants Reyes's motion to dismiss and dismisses the case in its entirety.

---

[1] Brown also asserts various state law claims against Collier.

**I.     FACTS**

The following facts from Brown's complaint are assumed to be true for purposes of this motion to dismiss. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). As the Acting Chief Probation Officer of the Cook County Adult Probation Department, Reyes was responsible for supervising, training, and managing Cook County probation officers. (Compl. ¶ 7.) Collier, a convicted sex offender, was on probation and subject to the requirements of the Cook County Probation Department's Adult Sex Offender Program. (*Id.* ¶ 5.) This program imposed a curfew and prohibited Collier from possessing a computer. (*Id.* ¶ 8.) One unidentified probation officer, an agent of Reyes, was specifically responsible for ensuring that Collier complied with these conditions of probation. (*Id.*)

Prior to July 30, 2010, Collier violated the terms of his probation over forty times by using a computer and violating curfew. (*Id.* ¶¶ 12-13.) Specifically, Collier contacted DP over the internet and obtained her home address. (*Id.* ¶ 13.) Then, on the evening of July 30, 2010, Collier forced his way into Brown and DP's home where he physically assaulted Brown and sexually assaulted DP. (*Id.* ¶ 13.) Neither Reyes nor the probation officer assigned to Collier discovered and disciplined Collier for these probation violations that enabled him to attack Brown and DP. (*Id.* ¶ 10.)

**II.    STANDARD**

To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In

analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id.* A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1949.

## III. DISCUSSION

In his motion, Reyes asserts that Brown lacks standing because the Cook County Probation Department never had an affirmative duty to protect Brown and DP from Collier. Whether Reyes and the probation department had a duty under the Due Process Clause to protect Brown and DP's "right to safety," however, is a question of whether Brown can state a claim upon which relief may be granted and falls under Rule 12(b)(6). The Court will evaluate Brown's § 1983 claim in that context.

### A. Section 1983 Claim

Under § 1983, Brown must allege: (1) a deprivation of a right guaranteed by the Constitution or laws of the United States; and (2) that a person acting under the color of state law caused the deprivation. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." By failing to intervene to stop Collier's attack, Brown claims that Reyes deprived her and DP of their constitutional "right to safety." In other words, according to

3

Brown, Reyes violated Brown and DP's interest in being free from unwarranted invasions of their personal security.

The Due Process Clause, however, is "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago County Dep't of Social Services, et al.*, 489 U.S. 189, 195 (1989). As a general rule, a state is not responsible for protecting citizens from harm by private actors under the Due Process Clause. *Id.* (finding the Due Process Clause serves "to protect the people from the State, not to ensure that the State protect[s] them from each other"); *Buchanan-Moore*, 570 F.3d at 827 (same). Brown's § 1983 claim turns on Reyes's alleged failure to protect Brown and DP from another private actor, Collier. Consequently, under *DeShaney*, Reyes has no duty to protect Brown and DP from violence from another private citizen.

The inquiry does not end there because there are two exceptions to the *DeShaney* rule where the state has an affirmative duty to protect individual citizens, the "special relationship" exception and the "state-created danger" exception. First, the state is obligated to protect those individuals in custodial settings where the state has limited an individual's ability to care for himself. *DeShaney*, 489 U.S. at 199-200 (the state has a duty to provide for the well-being of a private individual when the state "takes [that] person into its custody and holds him there against his will."); *see also Buchanan-Moore*, 570 F.3d at 827 ("when a state has custody over a person, it must protect him because no alternative avenues of aid exist."); *Paine v. Johnson*, 689 F. Supp. 2d 1027, 1075 (N.D. Ill. 2010) (Kendall, J) (same). In other words, when the state restrains an individual's freedom through incarceration or institutionalization, that individual can no longer provide for himself, creating a state duty to provide for "basic human needs," such as food, clothing, shelter, medical

4

care, and safety. *DeShaney*, 489 U.S. at 200; *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). This exception does not apply because Brown and DP were never incarcerated or otherwise restrained by the state.

That leaves the state-created danger exception. This exception applies when the state affirmatively places an individual in a position of danger that she would have not otherwise faced. *See Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1174 (7th Cir. 1997). Specifically, under this exception, Reyes could be liable to Brown if Brown demonstrates: (1) by an affirmative act, Reyes (or his agents) created a dangerous situation or increased the danger that she and DP faced; (2) Brown's failure was the proximate cause of harm to her and DP; and (3) Brown's failure to protect the Brown and DP "shocks the conscience." *King ex rel. King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007); *Buchanan-Moore*, 570 F.3d at 827; *Paine*, 689 F. Supp. 2d at 1075.

### 1. Affirmative Act Versus Negligent Failure to Act

With respect to the first component, there is no Due Process Clause claim where a private actor inflicts the harm and the state merely "stood by and did nothing when suspicious circumstances dictated a more active role." *DeShaney*, 489 U.S. at 203 (where social workers received complaints that child was being abused by his father but did not remove him from his father's custody, and the child was severely beaten, the father created the danger, not the state); *Bowers v. De Vito*, 686 F.2d 616, 618 (7th Cir. 1982) (releasing a criminal with history of violent convictions and failing to protect private individual from him not constitutional violation). The state must therefore affirmatively put private individuals in harm's way, effectively throwing them "into a snake pit." *Ellsworth v. Racine*, 774 F.2d 182, 185 (7th Cir. 1985) (quoting *Bowers*, 686 F.2d at 618); *see, e.g.,*

5

*White v. Rochford*, 592 F.2d 381 (7th Cir. 1979) (police officers had duty to protect minor children from immediate danger after officers arrested minor's guardian). "[T]he key question in determining whether [the state-created danger exception applies] is: What actions did the state actor affirmatively take, and what dangers would the victim otherwise have faced?" *Windle v. City of Marion, Ind.*, 321 F.3d 658, 661 (7th Cir. 2003).

*Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993) presents a classic state-created danger scenario. There, the police arrested the driver of a car, leaving behind a passenger they knew was drunk with the car's keys. *Id.* at 1124. A few hours later, the drunk passenger became a drunk driver who swerved into oncoming traffic and killed a woman riding in another car. *Id.* "It was the police action in removing [the driver], combined with their knowledge of [the passenger's] intoxication, which creates their liability for the subsequent accident." *Id*. In one poignant hypothetical, the court noted that police officers who affirmatively created or increased the danger could be held liable, but "officers could watch drunk drivers stumble to their cars and drive off, weaving across the road, without incurring section 1983 liability." *Id.* In short, affirmative action by the state, not merely inaction, is necessary to create liability. *See id.*; *see also Ellsworth*, 774 F.2d at 186 (no liability where police provided protection during day hours to an undercover narcotics agent's wife, and a masked man attacked her after the assigned bodyguard was released from duty); *DeShaney*, 489 U.S. at 203; *Bowers*, 686 F.2d at 618.

Brown claims that it was Reyes's inaction that violated her Fourteenth Amendment right to personal security; had the Cook County Probation Department more vigorously enforced the probation conditions, Collier's attack could have been avoided. In contrast to *Reed*, Brown's allegations substantively mirror those found not to state a claim in *Bright v. Westmoreland County*,

443 F.3d 276 (3d Cir. 2006). In that case, a convicted felon was on probation for "corrupting the morals" of a 12-year old girl. *Id.* at 278. As part of his probation, the felon was not permitted contact with his victim or any other minor. *Id.* He continually violated his parole by trying to re-start his relationship with his victim, and later murdered her sister as retaliation for the victim's family efforts to keep the original victim away from him. *Id.* at 279. The family sued the probation officer, asserting the probation office failed to step in to stop the probation violations and that failure proximately caused the death of their other daughter. *Id.* Reviewing the state-created danger doctrine in detail, the *Bright* court stressed that liability under the doctrine, per *DeShaney*, is "predicated upon the states' *affirmative acts* which work to the plaintiff's detriments in terms of exposure to danger." *Id.* at 282 (emphasis added). As for the probation officer's failure to act, the court concluded that "the state cannot 'create danger' giving rise to substantive due process liability by failing to more expeditiously seek someone's detention without doing so . . . or by taking note of a probation violation without taking steps to promptly secure the revocation of the probationer's probation." *Id.* at 284 (the "theory of liability based solely on a failure of the state to act is clearly foreclosed by *DeShaney*.").[2]

In other words, affirmatively creating a dangerous situation will trigger a constitutional duty to protect, but negligently failing to react to a potentially dangerous situation or sitting idly by does not. As pled, Brown takes issue with Reyes and the probation department's failure to respond to the preexisting danger posed by Collier. It does not allege any affirmative act by Reyes or the probation

---

[2] The allegations of inaction by the probation officer in *Bright* are far worse than those in the instant case. There, the plaintiff alleged that a probation officer personally confronted the offender after seeing him with his previous victim at a store, the victims' father asked the probation department to arrest the offender, and the probation department assured the victims' family it would take action immediately. *Id.* at 278-79.

department that put DP in danger, such as leaving DP in the same area as Collier or giving Collier DP's address. The "most that can be said of the state functionaries in this case is that they stood by and did nothing when . . . circumstances dictated a more active role for them." *DeShaney*, 489 U.S. at 203. That is not enough. Consequently, Brown cannot state a claim for a violation of her and DP's substantive due process rights and Brown's § 1983 claim fails for this reason alone.

### 2. Proximate Cause

Brown's complaint also does not plead facts showing Reyes or his agents proximately caused the harm she and DP suffered. For Brown to meet the proximate cause prong of the state-created danger test, Brown and DP must have been "forseeable victim[s] of [Reyes's] acts." *See Buchanan-Moore*, 570 F.3d at 828. Reyes's negligent supervision of Collier must have created a "familiar and specific" danger—limited in time and scope—to be foreseeable. *Reed*, 986 F.2d at 1127. For example, the danger in *Reed* was limited in scope (those traveling on the specific highway where the police left the drunk passenger) and time (the two hour span after the passenger took the wheel). *Id*. In contrast, in *Buchanan-Moore*, the state released a man it knew to be mentally ill and he killed another man who happened to be near a house the offender just burglarized. *See* 570 F.3d at 827. The court found the complaint alleged no facts showing the mentally ill man "posed a threat to a definable population" and "[d]angers to the public at large are insufficient for constitutional purposes." *Id.* at 828. (noting in *Reed* "the plaintiffs were within a "small, defined group of potential victims"). In short, the plaintiff in *Buchanan-Moore* did not sufficiently plead proximate cause because she presented no facts suggesting "that the [state] knew that [the victim], as distinguished from the public at large, faced any special danger." *Id.* at 828.

8

Like the plaintiff in *Buchanan-Moore*, Brown does not allege that Reyes's inaction exposed a specific segment of the population to danger. There are no allegations that DP was a previous victim of Collier's or that Collier had any previous connection with DP. Rather, she generally claims, without elaboration, that Reyes had a constitutional duty to enforce the conditions of probation. The only reasonable inference the Court may reach from Brown's allegations (*see Iqbal*, 129 S.Ct. at 1949) is that Collier and DP met via a random encounter on the internet. Further, Brown's complaint alleges no facts suggesting that Reyes or the probation department knew about Collier's probation violations before he attacked Brown and DP. That indicates that the attack was "unpredictable rather than legally foreseeable." *Buchanan-Moore*, 570 F.3d at 828. In short, the "amorphous zone of danger" (*id.*) alleged in Brown's complaint does not allow the Court to infer that Collier's attack was proximately caused by Reyes's failure to enforce Collier's probation conditions.

### 3. Shocks the Conscience

Finally, the inattentive supervision of Collier's compliance with probation rules is not extreme enough to "shock the conscience." There is not an exact framework for this analysis, but it tracks "tort law's spectrum of liability." *King*, 496 F.3d at 819. Only conduct that falls on the "more culpable end" of tort liability, such as where a public official displays deliberate indifference to the private individual's rights, shocks the conscience. *Id.* "In all cases, the conduct must be more culpable than mere negligence [to shock the conscience, because negligence] is 'categorically beneath the threshold of constitutional due process.'" *Id.* (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)). Here, Brown never alleges that Reyes knew about Collier's probation violations before the attack, and a generous interpretation of Reyes's inaction amounts to nothing beyond negligence. *See, e.g., King*, 496 F.3d at 819 (finding school policy preventing student reentry

9

after hours did not shock the conscience because it was merely negligent for failing to consider that, for safety reasons, a student may need to reenter the school). Brown cannot demonstrate any of the three prongs of the state-created danger test.

It is difficult to ignore Brown's horrific allegations concerning Reyes and the probation department's fact that Reyes and the probation officers under his control did little to enforce Collier's conditions of probation. However, the Constitution does not guarantee Brown and DP's safety from criminals. *See Bowers*, 686 F.2d at 618 ("There is no constitutional right to be protected by the state against [crimes committed] by criminals or madmen. It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment or . . . any other provision of the Constitution."). Such a rule would subject the taxpayer to nearly limitless liability and would infringe on the prerogative of elected officials of how best to regulate private conduct. *See DeShaney*, 489 U.S. at 196 (finding the Framers "were content to leave the extent of governmental obligation in [protecting private citizens from each other] to the democratic political processes."). Absent some affirmative act by the probation department, Brown and DP have no recourse under the Constitution and the Court dismisses Brown's § 1983 claim.

As for Brown's state law claims against Reyes (Counts II and III) and Collier (Counts IV-IX), "[i]t is the well-established law of [the Seventh] circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999). Consequently, the Court dismisses all the remaining claims. Brown may pursue these state claims against Reyes and Collier in state court.

    **4.    Other Matters**

Brown also seeks limited discovery to ascertain the identity of the probation officer assigned to monitor Collier so that she can amend the Complaint. The Court, however, has discretion to deny leave to amend where such an amendment would be futile. *See King*, 496 F.3d at 819 (amendment was futile because state actor did not affirmatively create danger for an individual); *Brunt v. Service Employees Intern. Union*, 284 F.3d 715, 720 (7th Cir. 2002). Even if Brown amended her complaint to add the probation officer responsible for overseeing Collier, it would not cure the most critical deficiency in her claim: neither Reyes nor any individual probation officer had a constitutional duty to protect Brown and DP from Collier's attack. The Court therefore denies Brown's request for both discovery and leave to amend.

**IV.    CONCLUSION**

For the above reasons, the Court grants Reyes's motion to dismiss (Doc. 11) and enters final judgment in favor of the defendants.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 2, 2011